FILED BY D.C.
05 FEB -4 PM 4: 09
ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

**HOMER C. PATTON and JEFFREY B. PRESLEY,**

Plaintiffs,

v.

Case No. 04-2257-D

**PAUL ADAMS,**

Defendant.

**ORDER DENYING THE MOTION OF DEFENDANT TO DISMISS OR, IN THE ALTERNATIVE, FOR CHANGE OF VENUE**

Before the Court is the motion of Paul Adams ("Defendant") to dismiss the complaint for lack of subject matter jurisdiction and personal jurisdiction. In the alternative, Defendant moves the Court to transfer the case pursuant to 28 U.S.C. § 1404(a). Homer Patton and Jeffrey B. Presley ("Plaintiffs") assert that the amount in controversy meets the requirements for diversity jurisdiction and that Plaintiff had sufficient minimum contacts with Tennessee to establish personal jurisdiction. For the following reasons, the Court **DENIES** Defendant's motion to dismiss, or, in the alternative, to transfer.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiffs, residents of Tennessee, apparently entered into negotiations with Comarth America, Inc., through Defendant, to purchase the exclusive rights to import, distribute, and market Comarth vehicles manufactured by Comarth SL Spain ("Comarth Spain"). Plaintiffs also negotiated

[1] The following facts taken from the complaint and attached exhibits are considered to be true solely for purposes of the instant order.

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 2-4-05

(13)

for the right to use the Comarth trademark in the United States and Canada.

Defendant, a New Jersey resident who maintains an office in New York, was introduced to Plaintiffs as the chief financial officer for a company known as Crosslander. Crosslander retained the right to market Comarth vehicles in the United States and Canada.

On or about July 31, 2003, Plaintiffs executed a letter of intent with Comarth America, Inc.[2] Pursuant to the letter of intent, Plaintiffs posted $150,000 into escrow in Defendant's New York bank account. From the $150,000, Plaintiffs released $50,000 to Comarth Spain for the production of four prototype vehicles. Plaintiffs likewise released $39,000 for "working capital" to Comarth America, which was to act as the operating entity in the United States for the sale of the vehicles. Part of the $39,000 was to be used to finish a prototype vehicle in the United States to be presented to the Department of Transportation and the Environmental Protection Agency in order to obtain the necessary approvals to market the vehicles in the United States.

Subsequently, Plaintiffs traveled to Spain to inspect the manufacturing facility of Comarth Spain. Defendant had told Plaintiffs that Comarth Spain had the ability to produce fifteen vehicles per day and that it was capable of producing a maximum of forty-five vehicles per day for the United States market. When Plaintiffs visited the Comarth Spain facility, however, they found an old warehouse that was primarily used to store "lemons." Moreover, the facility lacked the capability to produce any quantity of vehicles for the United States market.

After returning from Spain, Plaintiffs demanded that Defendant return the money that he held in escrow. On or about, November 4, 2003, Defendant responded to Plaintiffs via facsimile. Before

---

[2]Plaintiffs attached a copy of the letter of intent as an exhibit to the complaint. The letter indicates that Defendant faxed the proposed letter of intent to Plaintiffs.

Defendant would release the money, he required Plaintiffs to sign a document absolving Defendant and any related companies from liability and further prohibiting Plaintiff from initiating any legal action against Defendant. On November 4 and 5, 2003, Plaintiffs sent Defendant "fax memos" in response to Defendant's November 4, 2003 fax. Plaintiffs' November 4 and 5 memos demanded that Defendant return the money held in escrow.[3]

On April 12, 2004, Plaintiffs initiated the instant action asserting that Defendant defrauded them. Plaintiffs seek $150,000 in compensatory damages based on Defendant's failure to return the escrow funds and $500,0000 in damages based on Defendant's fraudulent conduct. On November 10, 2004, Defendant moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(2).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires courts to dismiss a complaint for lack of subject matter jurisdiction. Federal Rule of Civil Procedure 12(b)(2) requires dismissal of a claim for lack of jurisdiction over the person. The plaintiff bears the burden of establishing, by a preponderance of the evidence, the existence of federal subject matter jurisdiction and personal jurisdiction. Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991); McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936). When the party asserting jurisdiction finds its allegations challenged, it must submit evidence substantiating its claims. Amen v. City of Dearborn, 532 F.2d 554, 560 (6th Cir. 1976). The district court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990) (citations omitted). The court

---

[3]From the complaint and exhibits, it appears that Plaintiffs expected Defendant to return $61,000, which was the balance of the money held in escrow.

may consider such evidence without turning the motion into one for summary judgment. Id.

Where the court elects to decide jurisdictional issues on the written materials submitted, the plaintiff is required only to make a prima facie case of jurisdiction. Third Nat'l Bank v. WEDGE Group Inc., 882 F.2d 1087, 1089 (6th Cir. 1989); see also Armbruster v. Quinn, 711 F.2d 1332, 1335 (6th Cir. 1983). In other words, the plaintiff must only "demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss." Armbruster, 711 F.2d at 1335 (citations omitted). Courts must consider the pleadings and affidavits in the light most favorable to the plaintiff. Id. The plaintiff must ultimately prove jurisdiction by a preponderance of the evidence. See McNutt, 298 U.S. at 189.

## III. ANALYSIS

### A. Subject Matter Jurisdiction

Defendant contends that the Court lacks subject matter jurisdiction because the amount in dispute is only $61,000. Title 28, section 1332 of the United States Code provides in pertinent part that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between. . . citizens of different States. . . ." 28 U.S.C. § 1332. Thus, a district court has subject matter jurisdiction if the complaint and affidavits establish that the plaintiff is seeking more than $75,000 in damages and that the parties are citizens of different states. Such jurisdiction is known as diversity jurisdiction.

The complaint in the instant action asserts that Plaintiffs were residents of Tennessee and that Defendant was a resident of New Jersey. The complaint further alleges a claim of fraud and seeks damages in the amount of $500,000, in addition to compensatory damages of $150,000. The complaint, therefore, establishes that the parties are residents of different states and that the amount

in controversy is greater than $75,000. The Court finds that these allegations are sufficient to establish a prima facie case of diversity jurisdiction. Accordingly, the Court denies Defendant's motion to dismiss based on lack of subject matter jurisdiction.

**B. Personal Jurisdiction**

Defendant next asserts that the Court lacks personal jurisdiction over him because Defendant had no personal contact with the forum state. "A federal court in a diversity action may assume jurisdiction over a nonresident defendant only to the extent permitted by the state's long-arm statute and by the Due Process Clause." Neal v. Janssen, 270 F.3d 328, 331 (6th Cir. 2001). Section 20-2-214 of the Tennessee Code Annotated provides *inter alia* that

> (a) [p]ersons who are nonresidents of Tennessee. . . and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:
>
> (1) The transaction of any business within the state;
>
> (2) Any tortious act or omission within this state;
>
> . . .
>
> (5) Entering into a contract for services to be rendered or for materials to be furnished in this state;
>
> (6) Any basis not inconsistent with the constitution of this state or of the United States. . . .

Tenn. Code Ann. § 20-2-214(a)(1)-(2) and (5)-(6). Tennessee courts have interpreted § 20-2-214 to permit the exercise of personal jurisdiction "to the full limit allowed by due process." WEDGE, 882 F.2d at 1089 (quoting Masada Inv. Corp. v. Allen, 697 S.W.2d 332, 334 (Tenn.1985)). Due process requires a defendant to have had "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

Poyner v. Erma Werke GMBH, 618 F.2d 1186, 1190 (6th Cir. 1980) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

When considering whether the defendant had sufficient minimum contacts with the forum state to create personal jurisdiction, courts distinguish between general jurisdiction and specific jurisdiction, either one of which is an adequate basis for personal jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 473 n. 15. In the instant case, Plaintiffs have alleged in effect that specific jurisdiction exists. Specific jurisdiction exists when a court exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's specific contacts with the forum state. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 n. 8 (1984). To determine whether the non-resident defendant had the requisite minimum contacts such that a federal court has specific personal jurisdiction over him, the court must examine whether (1) the defendant personally availed himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action arose from the defendant's activities in the forum state; and (3) the acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable and/or fair. Neal, 270 F.3d at 332 (citing Reynolds v. Int'l Amateur Athletic Fed'n, 23 F.3d 1110, 1116 (6th Cir. 1994); Southern Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968)).

With respect to the first factor of the minimum contacts test, the "purposeful availment" factor, the Sixth Circuit has stated that this factor is satisfied if the defendant's contacts with the forum state are such that "he should reasonably anticipate being haled into court there." CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1263 (6th Cir. 1996). In cases asserting a claim for fraud "[t]he acts of making phone calls and sending facsimiles into the forum, standing alone, may

be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action." Neal, 270 F.3d at 332. In Neal, the Sixth Circuit determined that the defendant had purposefully availed himself of acting in the forum state based on fraudulent misrepresentations he made to the plaintiffs in faxes and telephone calls. Id. In so ruling, the Neal Court noted that "[w]hen the actual content of the communications into the forum gives rise to an intentional tort action, that alone may constitute purposeful availment." Id. The court in Neal reasoned that the purposeful availment factor was met because the defendant's "actions of sending false information into Tennessee by phone and fax had foreseeable effects in Tennessee and were directed at individuals in Tennessee." Id.

In the instant case, Plaintiffs assert that Defendant told Plaintiffs that Comarth Spain had the ability at that time to produce fifteen vehicles per day and the future capability to produce forty-five vehicles per day. This representation is further contained in the letter of intent purportedly faxed by Defendant to Plaintiffs, which Plaintiffs signed and returned to Defendant. Plaintiffs assert that Defendant's representation was fraudulent in that Comarth Spain did not have the ability to produce the promised quantities of vehicles. This allegedly false representation sent and/or made to Plaintiffs is not incidental to Plantiffs' lawsuit. Instead, it forms the primary basis for the lawsuit, i.e., fraudulent misrepresentation. Moreover, Defendant's communication with Plaintiffs was "significant because it constitute[d] the doing of business [in the forum state], rather than simply the exchange of information." Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 892 (6th Cir. 2002). The Court finds therefore that Plaintiffs have sufficiently alleged that Defendant purposely availed himself of the privilege of acting in Tennessee.

The second factor of the minimum contacts test, the "arising from" factor, requires the Court

to determine whether the cause of action arises from the defendant's activities in Tennessee. The "arising from" requirement is satisfied when the operative facts of the controversy arise from the defendant's contacts with the state. Mohasco, 401 F.2d at 384. The cause of action in this case arises from representations made by Defendant to Plaintiffs, who were located in Tennessee, concerning the ability of Comarth Spain to produce certain quantities of vehicles. These representations are contained in the terms of the letter of intent purportedly sent to Plaintiffs by Defendant and entered into by Comarth America and Plaintiffs. Moreover, Defendant's contacts with Tennessee are solely related to the terms of the letter of intent. The Court finds, therefore, that the second factor of the minimum contacts test has been satisfied.

As to the third factor of the minimum contacts test, whether the defendant's acts have a substantial enough connection with the forum to make the exercise of jurisdiction fair or reasonable, the Sixth Circuit has determined that "when the first two elements are met, an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion." First Nat'l Bank of Louisville v. J.W. Brewer Tire Co., 680 F.2d 1123, 1126 (6th Cir. 1982). The factors courts should consider when determining whether the exercise of personal jurisdiction over the defendant is fair and reasonable include: (1) the burden on the defendants; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) the interests of other states in securing the most efficient resolution of the controversy. Asahi Metal Indus. Co., Ltd. v. Superior Court, 480 U.S. 102, 113 (1987).

Defendant failed to offer any arguments in support of why any of these factors weigh against the exercise of personal jurisdiction. Moreover, as discussed *supra*, the Court has determined that Plaintiff has made a prima facie showing of the first two factors of the minimum contacts test.

Furthermore, the instant case is not so unusual as to defeat the inference that the third factor has been established. The Court finds, therefore, that the acts of Defendant had a substantial enough connection with Tennessee to make the exercise of jurisdiction over Defendant reasonable.

Plaintiffs have made a prima facie showing that Defendant is subject to personal jurisdiction under Tennessee's long-arm statute and that Defendant had sufficient minimum contacts with Tennessee to satisfy the due process clause. Accordingly, the Court denies Defendant's motion to dismiss on the basis of lack of personal jurisdiction. Defendant may renew the issue of personal jurisdiction, however, after discovery. See Neogen Corp., 282 F.3d at 893.

**C. Forum Non Conveniens**

Defendant moves the Court to transfer the instant action pursuant to 28 U.S.C. § 1404. As contemplated by the doctrine of *forum non conveniens*, § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). To determine whether a motion for a change of venue should be granted pursuant to § 1404(a), district courts "must weigh a number of case-specific factors such as the convenience of parties and witnesses, 'public-interest factors of systemic integrity,' and private concerns falling under the heading 'the interest of justice.'" Kerobo v. Southwestern Clean Fuels, Corp., 285 F.3d 531, 537 (6th Cir. 2002) (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 30 (1972)).

Defendant failed to assert any reasons in support of why the Court should transfer the instant action. Moreover, Defendant did not indicate to which venue the case should be transferred. Accordingly, the Court denies Defendant's motion to transfer.

## IV. CONCLUSION

For the aforementioned reasons, the Court denies Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (2). Likewise, the Court denies Defendant's motion to transfer the case pursuant to 28 U.S.C. § 1404(a).

**IT IS SO ORDERED** this 5th day of February, 2005.

**BERNICE BOUIE DONALD**
**UNITED STATES DISTRICT COURT**

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE

# Notice of Distribution

This notice confirms a copy of the document docketed as number 13 in case 2:04-CV-02257 was distributed by fax, mail, or direct printing on February 4, 2005 to the parties listed.

Marc Louis Schatten
GLANKLER BROWN
One Commerce Sq.
Ste. 1700
Memphis, TN 38103

Randall J. Fishman
BALLIN BALLIN & FISHMAN
200 Jefferson Ave.
Ste. 1250
Memphis, TN 38103

Paul Adams
331 West 57th Street
Apt. #276
New York, NY 10019

Honorable Bernice Donald
US DISTRICT COURT